UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Gevura Fund,

    Plaintiff,

          v.

UNITED STATES DEPARTMENT
OF EDUCATION; LINDA M. MCMAHON,
in her official capacity as Secretary of the
Department of Education; and KIMBERLY
RICHEY, in her official capacity as
Assistant Secretary for the Office of
Civil Rights

    Defendants.

Case No. _____

Complaint for Mandamus
and Declaratory Relief

## COMPLAINT FOR MANDAMUS AND DECLARATORY RELIEF

Plaintiff, by and through its undersigned attorneys, brings this Complaint against Defendants and in support state the following.

### INTRODUCTION

1. Plaintiff Gevura Fund ("Plaintiff" or "Gevura") brings this suit under the Administrative Procedure Act ("APA") to compel Defendant United States Department of Education ("DoED") to undertake overdue mandatory duties. Specifically, Plaintiff challenges the failure of Defendant Linda McMahon, in her official capacity as Secretary of the DoED, and Defendant Kimberly Richey, in her official capacity as Assistant Secretary for the Office of Civil Rights ("OCR"), in which roles they have been charged by Congress with enforcing Title VI of the Civil Rights Acts, overseeing DoED-OCR investigations into noncompliant educational institutions, and enforcing penalties against educational institutions failing to comply with Title VI.

1

2. DoED-OCR is charged with protecting civil rights by enforcing federal laws prohibiting discrimination in any education program or activity that receives federal funding. DoED-OCR must investigate complaints of discrimination and take action to ensure compliance and protect equal access and opportunity for all students.

3. DoED-OCR has a mandatory duty to promptly investigate complaints of discrimination. 34 C.F.R. § 100.7(c). Where DoED-OCR discovers noncompliance with federal civil rights law, DoED-OCR has a mandatory duty to resolve the matters, "by informal means whenever possible," 34 C.F.R. § 100.7(d), or by termination of federal funds and other penalties. 34 C.F.R. § 100.8.

4. DoED-OCR received complaints of rampant antisemitic discrimination occurring in the School District of Philadelphia ("SDP"), whose Jewish students were subjected to a hostile environment that infringed on their rights to equal access and opportunity to educational programming. Though an investigation was conducted, DoED-OCR entered into a Voluntary Resolution Agreement ("VRA") with SDP that utterly failed by its terms to rectify the hostile environment. Furthermore, DoED-OCR has failed to enforce the VRA, so that even its limited terms have been rendered practically useless.

5. In failing to execute an adequate VRA and failing to enforce the VRA's terms, Defendants have violated the Administrative Procedure Act ("APA").

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1346 (civil actions against the United States), and 5 U.S.C. § 702 (final agency action).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because at least one of Plaintiff's members reside in this District, and this civil action is brought against officers of the

United States acting in their official capacity, and a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

8. This Court is authorized to issue mandamus and declaratory relief pursuant to 28 U.S.C. §§ 1651, 2202 and Rules 21 and 57 of the Federal Rules of Civil Procedure.

9. This Court is authorized to vacate and set aside the VRA pursuant to 5 U.S.C. § 706.

10. Sovereign immunity for non-monetary relief is waived pursuant to 5 U.S.C. § 702.

**PARTIES**

11. Plaintiff Gevura Fund is an organization registered in the State of Delaware. Plaintiff's purpose includes advocating for religious freedom and liberty, and fighting the scourge of antisemitism in educational systems and workplaces throughout the United States, through independent research, outreach, education, and litigation. Plaintiff's mission includes advocating for Jewish school children in Pennsylvania, including in this District, who face discrimination. Plaintiff's members are Jews and non-Jewish allies committed to advancing religious freedom and addressing antisemitism in the U.S., including in the public school system.

12. At least one identified member of Plaintiff has a minor child currently enrolled in SDP who has personally experienced ongoing antisemitic hostility after the VRA, and whose injury is traceable in part to DoED-OCR's inadequate resolution and non-enforcement of the VRA. The relief sought does not require individual member participation.

13. Defendant DoED is the federal agency responsible for administering federal education funding, enforcing education laws, and overseeing programs such as federal student aid and civil rights enforcement in schools.

14. Defendant Linda M. McMahon is the Secretary of the DoED, in which role she has been charged by Congress with enforcing Title VI of the Civil Rights Act of 1964, overseeing OCR

3

investigations into noncompliant educational institutions, and enforcing penalties against educational institutions failing to comply with Title VI. Defendant McMahon is named as a Defendant in her official capacity.

15. Defendant Kimberly Richey is the Assistant Secretary for DoED-OCR, in which role she has been charged by Congress with enforcing Title VI of the Civil Rights Act of 1964, overseeing OCR investigations into noncompliant educational institutions, and enforcing penalties against educational institutions failing to comply with Title VI. Defendant Richey is named as a Defendant in her official capacity.

16. DoED's failure to timely perform the mandatory duties described herein adversely affect Plaintiff and its members, by depriving them of procedural protection and opportunities, including by (i) entering into a Voluntary Resolution Agreement ("VRA") with SDP that failed to adequately rectify the hostile environment for Jewish students in the school district, and (ii) failing to enforce the VRA executed with SDP. By executing an inadequate VRA and subsequently failing to enforce that same agreement, minor children of at least one identified member of Plaintiff have remained subjected to a hostile environment for Jewish students in SDP.

17. The above injuries will continue until the Court grants the relief requested herein.

## LEGAL BACKGROUND

18. Title VI prohibits discrimination on the basis of race, color, or national origin in any program or activity receiving federal financial assistance. 42 U.S.C. § 2000d.

19. DoED is authorized and obligated to enforce Title VI through regulations governing investigations, voluntary compliance efforts, and, where necessary, fund-termination or other enforcement proceedings. 42 U.S.C. § 2000d-1; 34 C.F.R. §§ 100.7, 100.8.

20. DoED-OCR is required to promptly investigate complaints whenever a compliance review, report, complaint, or other information indicates possible noncompliance with Title VI of the Civil Rights Act of 1964, including complaints of discrimination on the basis of national origin. 34 C.F.R. § 100.7(c).

21. If an investigation indicates noncompliance, DoED-OCR must attempt to secure compliance by voluntary means. 34 C.F.R. § 100.7(d)(1).

22. If voluntary compliance cannot be secured, DoED-OCR must proceed by the means authorized in 34 C.F.R. § 100.8, including the initiation of administrative enforcement procedures and other action authorized by law. *See* 42 U.S.C. § 2000d-1.

23. If DoED-OCR enters into an agreement with an educational institution to resolve and conclude an investigation into noncompliance, DoED-OCR has an obligation to monitor and ensure compliance with the agreement.

24. The Administrative Procedure Act ("APA") provides United States citizens a private cause of action to file suit against federal agencies, 5 U.S.C. § 702.

25. Under the APA, the court may compel actions "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

26. The court may only compel action where the "agency *failed* to take a discrete agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

27. In determining whether agency action has been "unlawfully withheld" or "unreasonably delayed," the court considers four factors: (i) the length of time elapsed since the agency came under a duty to act; (2) the reasonableness of the delay in the context of the statute authorizing the agency's action; (3) the consequences of the agency's delay; and (4) any plea of administrative

error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources. *Raymond Proffitt Found. v. U.S. E.P.A.*, 930 F. Supp. 1088, 1102–04 (E.D. Pa. 1996).

28. Under the APA, agencies may also be sued for unlawful actions or omissions that constitute a "final agency action." 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177 (1997). A "final agency action" for purposes of the APA is one that (i) "marks the consummation of the agency's decisionmaking process," and (ii) "from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal citations omitted).

29. The court may also set aside as unlawful agency "actions, findings, and conclusions" that the court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

30. An agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" is one where the agency, among other things, "entirely failed to consider an important aspect of the problem." *Pennsylvania v. Trump*, 795 F. Supp. 3d 607, 631 (E.D. Pa. 2025), *appeal filed on other grounds Pennsylvania, et al. v. Trump, et al.*, No. 25-2662 (3rd Cir. Sept. 5, 2025) (citing *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

31. When reviewing if an action is arbitrary or capricious, the court must determine whether the "agency has offered a satisfactory explanation for its action[,] including a *rational connection* between the facts found and the choice made." *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292–93 (2024) (internal citations and quotations omitted) (emphasis added).

**FACTUAL BACKGROUND**

6

32. Persistent, pervasive, and severe anti-Jewish animus is a poisonous rot that has taken hold in the School District of Philadelphia ("SDP"), one of the largest K-12 school districts in the country with an estimated 198,405 students. Parents of minor children attending SDP schools filed complaints with DoED-OCR alleging a hostile environment for Jewish students in SDP schools during the 2022-2023 and 2023-2024 school years.

33. Many of the perpetrators of the antisemitic discrimination and harassment were SDP teachers and administrators, including the director of the SDP's social studies curriculum.

34. A DoED-OCR investigation into identified Title VI compliance concerns regarding SDP's failure to: (1) fulfill its Title VI obligation to respond to notifications of alleged harassment of Jewish students based on shared ancestry; (2) failure to assess whether a hostile environment existed and if so to take steps reasonably designed to redress it; and (3) maintain records as required under Title VI. DoED-OCR also found evidence of SDP retaliation against complainants and community organizers for their advocacy on the issue of an antisemitic environment in SDP schools.

35. On or about December 18, 2024, SDP signed a Voluntary Resolution Agreement ("VRA") with DoED–OCR, ostensibly obligating it to rectify its system of monitoring, reporting, and responding to antisemitism in its schools as a prerequisite to retaining eligibility for the millions of dollars in federal monies SDP annually receives.[1]

36. Though the VRA was theoretically intended to obligate SDP to make certain changes to policy and procedure in order to stop, root out, and prevent anti-Jewish discrimination, it is wholly unfit for purpose. The DoED executed a VRA to close out an investigation into severe and

---

[1] Voluntary Resolution Agreement, attached as **Exhibit A**.

pervasive discrimination, but the agreement does nothing to reach the substantive issues, i.e. ensuring SDP complies with its civil rights obligations.

37. The VRA creates training and reporting requirements, but the remedies do not meaningfully overcome the effects of the rampant antisemitic discrimination in SDP.

38. Specifically, the VRA had such weak requirements as mandating that SDP post an anti-harassment statement at its schools, and review its policies for Title VI compliance.

39. The VRA also lacked any mechanism to provide relief to students who had already suffered discrimination and a hostile environment, and felt unsafe continuing at their given school.

40. The VRA's terms were, at best, a bandage on a bleeding wound, and at worst, a hasty attempt to simply close out an investigation.

41. Among other things, the VRA emphasized training, notice, and policy review, but did not require sufficiently concrete measures to address district-level drivers of the hostile environment, ensure meaningful monitoring of implementation, or provide adequate relief for affected Jewish students.

42. The VRA also set deadlines and obligations for SDP to undertake specified remedial actions. Upon information and belief, SDP failed to complete one or more material obligations on time and failed to fully implement changes necessary to eliminate the hostile environment and prevent its recurrence.

43. Moreover, Defendants have failed to enforce even the limited terms of the VRA, with SDP violating the terms of the VRA by failing to ensure that the required changes were implemented and by allowing the hostile environment against Jewish students to persist. Defendants' failure to enforce has rendered the already weak agreement entirely toothless.

8

44. Under the VRA, SDP was required to: (i) post a districtwide anti-harassment statement that addressed antisemitism as a form of shared-ancestry discrimination; (ii) revise its policies to cover shared-ancestry antisemitism; (iii) clarify reporting and investigation procedures; (iv) maintain a complaint monitoring system; and (v) institute training protocols.

45. Upon information and belief, SDP has not upheld any of these obligations, and DoED-OCR has failed to take any enforcement action against the noncompliant school district.

46. The VRA included a clause requiring DoED-OCR to monitor SDP until satisfied with the school district's compliance.

47. DoED-OCR was therefore aware, or should have been aware, of SDP's noncompliance and of ongoing antisemitic incidents and complaints after execution of the VRA, yet failed to make a timely compliance determination or take the next enforcement steps required by law.

48. As a result, Jewish students in SDP schools, including minor children of Plaintiff's members, have remained subject to an ongoing hostile environment and are denied the full and equal educational access that federal law guarantees and that the VRA was supposed to ensure.

49. In executing a VRA to settle a Title VI investigation that failed to adequately rectify the hostile environment for Jewish students, and in then failing to enforce even the meager requirements of the VRA, DoED has violated the APA.

50. Since the execution of the VRA, Jewish students in SDP schools have continued to experience and complain of rampant antisemitic discrimination.[2]

---

[2] *See generally* Rebecca Schgallis, *Shaping Minds, Spreading Hate: How Antisemitism Took Root in the School District of Philadelphia*, COMMITTEE FOR ACCURACY IN MIDDLE EAST REPORTING AND ANALYSIS, *available at* https://www.camera.org/wp-content/uploads/2026/02/Shaping-Minds-Spreading-Hate-Philadelphia-Schools-Bias-Report-CAMERA.pdf, attached as **Exhibit B**.

51. The House Committee on Education and Workforce has launched its own investigation into antisemitism in SDP because of the ongoing reports and complaints of antisemitism and a hostile environment against Jewish students, including SDP's failure to fulfill its obligations under the VRA.[3]

**COUNT I**
**Administrative Procedure Act, 5 U.S.C. § 706(1)**
**(Action Unlawfully Withheld or Unreasonably Delayed)**

52. Plaintiff incorporates the above paragraphs as if fully set forth herein.

53. Title VI and its implementing regulations impose on Defendants discrete, mandatory duties relevant here.

54. Once OCR's investigation indicated noncompliance, Defendants were required to secure compliance by voluntary means if possible and, if voluntary means proved ineffective or noncompliance persisted, to proceed to the enforcement mechanisms authorized by law. 34 C.F.R. §§ 100.7(d), 100.8; 42 U.S.C. § 2000d-1.

55. After execution of the VRA, Defendants also had a mandatory duty to determine whether SDP was in fact carrying out the remedial obligations on which OCR relied to resolve the complaint and to take the next required enforcement steps if SDP failed to do so.

56. Defendants have unlawfully withheld or unreasonably delayed those discrete actions. Despite the passage of substantial time since the VRA was executed, and despite continuing reports of antisemitic hostility and noncompliance, Defendants have failed to make and implement the compliance determinations and enforcement decisions required by law.

---

[3] Letter from US House of Representatives Committee on Education and Workforce Letter to SDP Superintendent Tony Watlington (Nov. 24, 2025), *available at* https://edworkforce.house.gov/uploadedfiles/philadelphia_doe_letter_11.22.25.pdf, attached as **Exhibit C**.

57. That delay is unreasonable in light of the nature of the underlying rights at stake. The subject of the investigation is discrimination against schoolchildren in a federally funded public school system. Delay in that setting perpetuates immediate and ongoing harm.

58. The consequences of Defendants' inaction are severe. Jewish students continue to face an allegedly hostile educational environment while OCR's resolution remains ineffective and unenforced.

59. Plaintiff is therefore entitled to relief under 5 U.S.C. § 706(1), including an order compelling Defendants to perform the compliance and enforcement actions the law requires.

60. The APA provides that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

61. An agency action is "unlawfully withheld" or "unreasonably delayed" where (i) an unreasonable length of time has elapsed since the agency came under a duty to act; (2) the delay in the context of the statute authorizing the agency's action is unreasonable; (3) there are consequences of the agency's delay; and (4) enforcement has no practical difficulty or undue strain on administrative resources. *Raymond*, 930 F. Supp. at 1102–04.

62. Defendants have failed to enforce the VRA, as they are required to do pursuant to 5 U.S.C. § 706 and 42 U.S.C. § 2000d-1. Defendants' failure to enforce constitutes an unreasonable delay.

63. *First*, over a year has elapsed since its execution, including the winter-spring 2025 semester, the fall 2025 semester, and the majority of the winter-spring 2026 semester.

64. *Second*, Defendants are obligated to enforce the VRA by "monitor[ing] [SDP's] implementation of the terms and obligations of the resolution agreement to verify that the remedial

11

actions agreed to by the recipient are being properly implemented."[4] *See* 42 U.S.C. § 2000d-1. Allowing over a year to elapse from the execution of a VRA to remediate Title VI compliance issues by SDP to monitor and enforce is unreasonable.

65. *Third*, the consequences of Defendants' unreasonable delay by failing to enforce the VRA has subjected the thousands of children in SDP schools to an ongoing hostile environment.[5]

66. *Fourth*, there is no undue strain on DoED-OCR in monitoring the VRA it executed with SDP. Monitoring an educational institution for compliance with the remediation agreement is one of the most basic functions of the federal agency.

67. Defendants' failure to enforce the VRA constitutes agency action that has been "unlawfully withheld or unreasonably delayed."

68. As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer irreparable harm.

**COUNT II**
**Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**
**(Arbitrary, Capricious, and Abuse of Discretion)**

69. Plaintiff incorporates the above paragraphs as if fully set forth herein.

70. The APA provides that courts "shall . . . hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion . . . ." 5 U.S.C. § 706(2)(A).

71. OCR's decision to resolve its SDP investigation through the VRA and to close the matter on that basis constituted final agency action because it marked the consummation of OCR's decisionmaking with respect to the complaint and fixed the remedial framework governing SDP's

---

[4] OCR Complaint Processing Procedures, *available at* https://www.ed.gov/sites/ed/files/about/offices/list/ocr/docs/complaints-how.pdf, attached as **Exhibit D.**

[5] *See, e.g.*, Letter, *supra* note 2.

obligations absent further agency action. The VRA constitutes a final agency action subject to judicial review, marking the "consummation" of Defendant DoED's decisionmaking process and prescribing new substantive obligations "from which legal consequences will flow." *Bennett*, 520 U.S. at 178.

72. The VRA is arbitrary and capricious because Defendants failed to consider important aspects of the problem the VRA was intended to remediate.

73. The VRA is arbitrary and capricious because Defendants have failed to consider important aspects of the problem the VRA was intended to remediate, including that a school district infected with anti-Jewish discrimination from the top down would be unable to implement necessary reforms; the seriousness and persistence of the hostile environment; the alleged involvement of district personnel who could not be trusted to implement the necessary policy changes to remediate the hostile environment; the need for measures directed at institutional causes of the discrimination; and the inadequacy of merely procedural or symbolic remedies in the face of entrenched district-wide problems.

74. Many of the conditions at SDP that have continued to be complained of as contributing to a hostile environment, and that are currently being investigated by Congress, were present at the time of Defendants' execution of the VRA, including the employment before, during, and since the VRA of a widely-condemned antisemite as the director of social studies curriculum.

75. The VRA's weak terms are plainly wholly insufficient as a resolution measure to remediate the rampant hostility to Jewish students at SDP. For example, the VRA included no measures for better monitoring and controlling antisemitic curriculum and teacher activism, which are two key contributing factors to the hostile environment throughout SDP.

76. Defendants also failed to articulate a rational connection between the findings underlying OCR's investigation and the limited remedial measures required by the VRA.

77. In particular, the VRA did not require remedies reasonably calculated to eliminate the hostile environment, prevent recurrence, and cure its effects, including a measure for students suffering discrimination to transfer schools. Instead, it relied on measures that were materially disproportionate to the severity and scope of the violations OCR had identified, and the goal of rooting out entrenched antisemitic discrimination throughout one of the nation's largest school districts.

78. The VRA is therefore "arbitrary, capricious, [or] an abuse of discretion . . . ." 5 U.S.C. § 706(2)(A).

79. As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Declare that Defendants are in violation of the APA regarding their failure to perform the mandatory duties listed above;

(b) Declare that Defendants have "unlawfully withheld" or "unreasonably delayed" enforcement of the VRA, within the meaning of 5 U.S.C. § 706(1);

(c) Compel DoED-OCR to perform its mandatory compliance functions under 34 C.F.R. §§ 100.7(d) and 100.8 by determining whether SDP has complied, making a compliance determination, and if noncompliance persists, commencing the next required enforcement steps;

14

(d) Declare that the VRA is arbitrary, capricious, an abuse of discretion, and not in accordance with the law, within the meaning of 5 U.S.C. § 706(2);

(e) Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

(f) Award Plaintiff its reasonable costs of litigation, including attorneys' and experts' fees, costs, and expenses; and

(g) Grant all such other and further relief as the Court deems just and proper.

Dated: March 25, 2026.

Respectfully Submitted,

  /s/  Jerome M. Marcus
Jerome M. Marcus (PA Bar No. 50708)
Lori Lowenthal Marcus (PA Bar No. 53388)
THE DEBORAH PROJECT
P.O. Box 212
Merion Station, PA 19066
jmarcus@deborahproject.org
lorilowenthalmarcus@deborahproject.org
Phone: (610) 880-0100

Mark Goldfeder*
Ben Schlager*
Rachel Sebbag*
NATIONAL JEWISH ADVOCACY CENTER, INC.
3 Times Square Suite 512
New York, NY 10036
mark@njaclaw.org
ben@njaclaw.org
rachel@njaclaw.org
Phone: (332) 278-1100

*Attorneys for Plaintiff*

15

*pro hac admission forthcoming*