**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| GEVURA FUND, | |
| *Plaintiff*, | |
| v. | Case No. 26-cv-01957-NIQA |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF
SCHOOL DISTRICT OF PHILADELPHIA'S MOTION TO INTERVENE**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

I.    The School District Is Entitled to Intervene As of Right Under Rule 24(a)(2). .................... 5

    A.    The School District's Motion is Timely. .............................................................. 5

    B.    The School District Has a Protectable Legal Interest. ......................................... 6

    C.    Disposition of This Action May Impair the School District's Ability to Protect Its Interests. ................................................................................................................ 7

    D.    The School District's Interests Are Not Adequately Represented by Defendants. ............ 8

II.    The Court Should Permit the School District to Intervene Under Rule 24(b). ...................... 9

III.   The School District's Motion Satisfies Rule 24(c). .............................................................. 10

CONCLUSION ...................................................................................................................... 11

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arizona v. City & Cnty. of San Francisco*,
    596 U.S. 763 (2022)......................................................................................................9

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg.*
    *Loan Litig.*,
    418 F.3d 277 (3d Cir. 2005)........................................................................................8

*EEOC v. AT&T*,
    506 F.2d 735 (3d Cir. 1974).........................................................................................7

*Harris v. Reeves*,
    946 F.2d 214 (3d Cir. 1991)......................................................................................5, 6

*King v. Governor of N.J.*,
    767 F.3d 216 (3d Cir. 2014)....................................................................................9, 10

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998)......................................................................................5, 9

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995)...............................................................................5, 6, 7, 8

*Nat'l Parks Conservation Ass'n v. EPA*,
    759 F.3d 969 (8th Cir. 2014) ........................................................................................5

*Pennsylvania v. President of the U.S.*,
    888 F.3d 52 (3d Cir. 2018)........................................................................................5, 8

*Pereira v. Foot Locker, Inc.*,
    No. 07-CV-2157, 2009 WL 4673865 (E.D. Pa. Dec. 7, 2009)................................11

*Rotstain v. Mendez*,
    986 F.3d 931 (5th Cir. 2021) ........................................................................................5

*Uber Techs., Inc. v. Boddie*,
    746 F. Supp. 3d 231 (E.D. Pa. 2024) .......................................................................10

*United States v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3d Cir. 1994).......................................................................................6, 7

*United States v. Territory of Virgin Islands*,
    748 F.3d 514 (3d Cir. 2014)......................................................................................8, 9

*In re Vitamins Antitrust Class Actions*,
  215 F.3d 26 (D.C. Cir. 2000)....................................................................................5

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016)......................................................................................6

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
  701 F.3d 938 (3d Cir. 2012)......................................................................................6

**Statutes**

42 U.S.C. § 2000d...........................................................................................................3

**Regulations**

34 C.F.R. § 100.7(d) ...................................................................................................4, 7

34 C.F.R. § 100.8 ........................................................................................................4, 7

**Court Rules**

Fed. R. Civ. P. 24(a)(2)...................................................................................................5

Fed. R. Civ. P. 24(b)(1)(B) .............................................................................................9

Fed. R. Civ. P. 24(b)(3)....................................................................................................9

Fed. R. Civ. P. 24(c) ......................................................................................................10

**Other Authorities**

U.S. Chamber of Commerce, *Sue and Settle: Regulating Behind Closed Doors*
  (2013)...........................................................................................................................4

**INTRODUCTION**

In December 2024, the School District of Philadelphia (the "School District") entered into a Voluntary Resolution Agreement (the "Agreement") with the U.S. Department of Education (the "Department") to resolve an investigation into the School District's compliance with Title VI of the Civil Rights Act of 1964 ("Title VI"). In the one-and-a-half years since it was signed, that Agreement has resulted in meaningful changes in the School District. Among other changes, the School District has enhanced its anti-discrimination policies, provided investigative training to District personnel involved in handling investigations and continued its annual policy of providing anti-discrimination training to all employees, developed a student informational program and survey for students in grades 6 through 12, retained an outside consultant with expertise in shared-ancestry harassment, and purchased case management software to better monitor complaints of discrimination and harassment. The School District continues to implement the Agreement subject to the Department's monitoring.

Ignoring this history, Plaintiff Gevura Fund now asks this Court to declare the Agreement unlawful and compel the Department to initiate enforcement measures against the School District. The School District seeks to intervene as Plaintiff has no grounds for relief. As explained in the attached motion to dismiss, Plaintiff's request flies in the face of black letter law that private parties may not compel the exercise of the government's enforcement discretion. The Federal Rules of Civil Procedure do not require the School District to watch from the sidelines as a third party launches a baseless attack on the validity of the Agreement, the promptness of the School District's compliance efforts, and the federal government's enforcement posture.

The School District easily satisfies the requirements for intervention as of right under Rule 24(a)(2) or, at a minimum, for permissive intervention under Rule 24(b). This motion is timely: the Complaint was filed mere weeks ago, and no proceedings of substance on the merits have

occurred.  In addition, the School District's interest in this litigation is self-evident—it is difficult to imagine a more direct stake than that of the signatory to the very Agreement the Plaintiff asks the Court to undo.  The School District has been actively implementing the terms of that Agreement by, among other things, revising anti-discrimination policies, instituting new reporting and investigation procedures (including via the procurement of new recordkeeping and case management software), providing Title VI training to staff, and retaining an outside consultant with expertise in shared-ancestry harassment.

Nor can the School District be sure that the United States will adequately defend the Agreement.  Indeed, there is evidence that Plaintiff's frivolous lawsuit may have been brought pretextually.  Metadata associated with the Complaint bears the internal title "2026-03-25 SDP - *Sue and Settle* [final for filing].pdf."[1]  *See* Decl. of Erika Chen ¶¶ 5, 7 (emphasis added).  "Sue and settle" is a term of art describing a litigation strategy in which a plaintiff sues a government agency—not to obtain a genuinely contested adjudication, but to create a vehicle for an agency to abandon its pre-existing litigation or enforcement position.  In other words, the metadata implies that Plaintiff is seeking to use this lawsuit as a vehicle by which the Department can renounce the Agreement without complying with the procedural protections that the Agreement affords the School District.  Only through intervention may this Court ensure that the School District's interests are adequately represented.

## STATEMENT OF FACTS

The Philadelphia school system is one of the largest K-12 public school systems in the United States and serves approximately 200,000 students in both District and charter schools for the 2025–2026 school year across 330 academic programs.  Compl. ¶ 32.  The School District

---

[1] This metadata is viewable by clicking "Menu" and " Document Properties" on the file-stamped version of the Complaint.

receives millions of dollars annually in federal education funding, which is relied upon to provide essential educational services to Philadelphia's children. *See* Compl. ¶ 35.

During the 2022–2023 and 2023–2024 school years, various parents and Jewish organizations filed complaints with the Department's Office for Civil Rights alleging a hostile environment for Jewish students in Philadelphia schools. Compl. ¶¶ 32–33. In May 2024, the Department responded by opening a formal investigation of the School District's compliance with Title VI of the Civil Rights Act of 1964, which prohibits discrimination in programs receiving federal financial assistance. 42 U.S.C. § 2000d; Compl. ¶¶ 18, 34.

On December 18, 2024, the School District entered into the Agreement with the Department to resolve the investigation. Compl. ¶ 35; *id.* Ex. A. Under the Agreement, the School District agreed to undertake a series of initiatives, including the promulgation and distribution of a districtwide anti-harassment statement; revision of the School District's antidiscrimination policies; procurement of new case management software that logs and tracks the handling of antisemitism complaints; enhanced Title VI training for staff; and retention of an outside consultant with expertise in shared-ancestry harassment. Compl. ¶ 44; *id.* Ex. A.

The Agreement also explicitly contemplates an ongoing relationship between the parties to guarantee compliance. The Agreement provides that the Department will have the right to review, monitor, and approve the School District's implementation of those requirements. Compl. ¶¶ 44, 46. In exchange, the Agreement affords the School District important protections: it guarantees a sixty-day cure period before the Department may initiate enforcement proceedings for any breach. Compl. Ex. A at 13.

On March 25, 2026, Plaintiff Gevura Fund filed this Complaint against the Department and relevant officials. Plaintiff claims that the Defendants have failed to sufficiently enforce Title VI

3

against the School District and that the Defendants acted arbitrarily and capriciously in entering the Agreement.  Compl. ¶¶ 52–79.  Accordingly, Plaintiff asks this Court to (a) declare that Defendants have unlawfully withheld or unreasonably delayed enforcement of the Agreement; (b) compel the Department to make a determination on the School District's compliance with Title VI and, if noncompliant, to initiate enforcement proceedings under 34 C.F.R. §§ 100.7(d) and 100.8; and (c) declare the Agreement arbitrary, capricious, an abuse of discretion, and not in accordance with law.  Compl., Prayer for Relief §§ (a)–(d).

Despite the obvious and serious ramifications for the School District, neither Plaintiff nor Defendants have notified the School District of this suit.  Indeed, the metadata of the file-stamped copy of the Complaint filed on the Court's docket raises troubling questions about the true motivations behind the suit.  That embedded metadata[2] reveals that the document is titled "2026-03-25 SDP - *Sue and Settle* [final for filing].pdf."  Decl. of Erika Chen ¶¶ 5, 7 (emphasis added).  "Sue and settle" is a term of art describing a litigation practice in which a plaintiff files suit against a government defendant with no intention of actually litigating.  Instead, the plaintiff does so with the expectation—often prearranged—that the government will abandon its prior enforcement posture, either by settling or by failing to defend its prior litigating position or enforcement posture in earnest before the court.  *See* U.S. Chamber of Commerce, *Sue and Settle: Regulating Behind Closed Doors* (2013).  To avoid that potential outcome here, the School District has a right to be heard at the outset.

---

[2] *See supra* n.1.

**ARGUMENT**

**I.    The School District Is Entitled to Intervene As of Right Under Rule 24(a)(2).**

A party may "intervene as of right if (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in litigation." *Harris v. Reeves*, 946 F.2d 214, 219 (3d Cir. 1991) (citing Fed. R. Civ. P. 24(a)(2)).  This Circuit has "stated a 'policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks.'" *Pennsylvania v. President of the U.S.*, 888 F.3d 52, 59 (3d Cir. 2018) (citation omitted).

Accordingly, Rule 24(a) reflects an "elasticity" that "allow[s] intervention by those who might be practically disadvantaged by the disposition of the action." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998).  To that end, federal courts of appeals have uniformly concluded that Rule 24(a) should be construed liberally, with all "doubts resolved in favor of the proposed intervenor." *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 975 (8th Cir. 2014); *see also Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021) (courts "should liberally construe the test for mandatory intervention" and should "allow intervention where no one would be hurt and the greater justice could be attained" (cleaned up)); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 29 (D.C. Cir. 2000) (acknowledging a general "willingness to construe Rule 24(a)'s 'interest' requirement liberally").  The School District easily satisfies all of Rule 24(a)'s requirements and should be permitted to intervene as of right.

**A. The School District's Motion is Timely.**

There is no question that the School District's motion is timely.  To determine timeliness, courts evaluate three interconnected factors: (1) the stage of the proceeding; (2) the prejudice that delay may cause to the parties; and (3) the reason for the delay. *Mountain Top Condo. Ass'n v.*

*Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). The most critical inquiry under the Third Circuit's framework is "what proceedings of substance on the merits have occurred." *Id*. The Third Circuit is "general[ly] reluctan[t] to dispose of a motion to intervene as of right on untimeliness grounds." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016).

In this instance, the Complaint was filed mere weeks ago, on March 25, 2026, and no "proceedings of substance on the merits have occurred." *Mountain Top*, 72 F.3d at 369. Nor would any party suffer prejudice from the intervention at this nascent stage. No deadlines have yet been set, so none will need to be changed.

Finally, the School District moved promptly upon learning that the Complaint placed its interests in jeopardy. *See Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 950 (3d Cir. 2012) ("The delay should be measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights."); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994) (same). The Third Circuit and courts in this District have found motions timely when filed far less punctually. In *Mountain Top*, for example, the Third Circuit reversed the denial of intervention even though four years had passed since the suit was filed because depositions had not been taken and dispositive motions had not been filed. *See* 72 F.3d at 369–70; *see also Alcan Aluminum*, 25 F.3d at 1182–83 (motion timely despite being filed over four years after the litigation began).

### B. The School District Has a Protectable Legal Interest.

The School District has a "substantial, protected interest in the litigation." *Harris*, 946 F.2d at 222. Indeed, it is difficult to imagine a party with a more direct stake in this action. The Complaint seeks to vacate the School District's Agreement and to compel the Department to bring enforcement measures against the School District. Compl. Prayer for Relief §§ (a)–(d). The Third Circuit has long recognized that where litigation threatens to modify or invalidate an agreement to

which the proposed intervenor is a party, that intervenor possesses a legally protectable interest sufficient to support intervention under Rule 24(a)(2).  In *EEOC v. AT&T*, for example, the court held that a union was entitled to intervene in an action where a consent decree could "modif[y] or invalidate[]" provisions of the union's collective bargaining agreements.  506 F.2d 735, 741–42 (3d Cir. 1974).  Similarly, in *United States v. Alcan Aluminum*, the court held that early settling parties were entitled to intervene in a subsequent action where a consent decree could "extinguish" their statutory right to seek contribution from non-settling parties.  25 F.3d at 1184–86.

Here, the Agreement defines the School District's obligations and forecloses the harsher enforcement measures Plaintiff now seeks to trigger.  The Department must give the School District written notice of any alleged breach and sixty calendar days to cure *before* initiating administrative enforcement proceedings or judicial proceedings.  Compl. Ex. A at 13.  Thus, Plaintiff's lawsuit seeks to strip the School District of the specific protections it bargained for in the Agreement—exactly the kind of harm the Third Circuit has held warrants intervention.

### C. Disposition of This Action May Impair the School District's Ability to Protect Its Interests.

The School District also clears the third Rule 24(a)(2) hurdle:  there is far more than a mere possibility that its interests "may be affected or impaired, as a practical matter by the disposition of the action." *Mountain Top*, 72 F.3d at 366.  Plaintiff seeks an order declaring the Agreement unlawful and compelling the Department to take specific enforcement actions vis-à-vis the School District.  As explained in the attached motion to dismiss, decades of precedent render such relief unavailable.  If this Court were to disagree, however, the Agreement that the federal government and School District negotiated would be torn up, and the School District could be subjected to additional enforcement actions by the federal government. *See* 34 C.F.R. §§ 100.7(d), 100.8; Compl. ¶¶ 32, 35, 44.  As the Third Circuit recognized in *Mountain Top*, a proposed intervenor's

interests are impaired when the disposition of an action in its absence could unilaterally alter the legal framework governing its rights and obligations—leaving it, in effect, bound by a result it had no opportunity to contest.  72 F.3d at 368.  That is precisely what would occur here if this case proceeds to judgment without the School District.

### D.  The School District's Interests Are Not Adequately Represented by Defendants.

Finally, the existing Defendants do not adequately represent the School District's interests. A prospective intervenor need only show "that representation of his interest '*may* be' inadequate." *Pennsylvania*, 888 F.3d at 60 (quoting *Mountain Top*, 72 F.3d at 368) (emphasis in original).  That burden is "minimal," unless one of two "rebuttable presumption[s] of adequacy applies." *Id.*  The first arises when "one party is a government entity charged by law with representing the interests of the applicant for intervention." *Id.* (quoting *United States v. Territory of Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014)).  Another presumption may arise "when the party seeking intervention has the same ultimate objective as a party to the suit." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 315 (3d Cir. 2005).

Neither presumption applies here.  Far from representing the School District's interests, the Department is charged with enforcing civil rights laws against it and other school districts. That legal scheme is the opposite of the relationship the intervention presumptions contemplate. For that reason, neither the School District nor this Court can be confident that the Department shares the same "ultimate objective" as the School District, i.e., vigorously defending the Agreement they negotiated at arms'-length.  Nor can the School District count on the Department to defend the School District's commitment to non-discrimination and Title VI compliance. Moreover, while the School District should be able to rely on the Agreement notwithstanding shifts in Department personnel, policies, and priorities, the law does not require the School District to sit on the sidelines and assume that the Department will in earnest defend the Agreement.  *See*

8

*Kleissler*, 157 F.3d at 974 ("[I]t is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts.").

The Complaint's metadata further undermines any presumption that the United States and the School District have shared goals. To the contrary, the metadata suggests that the Plaintiff and Defendants may not be genuinely adverse at all. *Virgin Islands*, 748 F.3d at 520 ("collusion between the representative party and the opposing party" can rebut the presumption of adequacy). Only discovery of pre-complaint communications may shed light on that question, but the School District should not have to take the risk and be left without adequate representation. *Cf. Arizona v. City & Cnty. of San Francisco*, 596 U.S. 763, 766 (2022) (Roberts, C.J., concurring) (criticizing government for "rulemaking-by-collusive-acquiescence"). That possibility can be explored only if the School District is permitted to intervene.

## II.    The Court Should Permit the School District to Intervene Under Rule 24(b).

At a minimum, the Court should permit the School District to intervene under Rule 24(b) because the School District "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) requires that the motion be timely, and intervention must not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also King v. Governor of N.J.*, 767 F.3d 216, 246 (3d Cir. 2014).

Here, the School District's defenses clearly share common questions of law and fact with the main action. Plaintiff's Complaint centers on the Agreement negotiated by the federal government and the School District, and the very compliance framework established by the Agreement under which the School District currently operates. Each of Plaintiff's claims—challenging the adequacy of the Department's investigation, the lawfulness of the Agreement, and

9

the propriety of the Department's enforcement decisions—directly concerns the School District's conduct and obligations under Title VI and the Agreement.

The School District, moreover, intends to argue, among other things, that Plaintiff lacks Article III standing and, as a matter of law, cannot compel the agency action it requests. More broadly, the School District seeks to defend the Agreement on the merits as a lawful, adequate, and negotiated resolution of the Department's compliance concerns—a position that overlaps with, but is distinct from, any defense the Department may raise in its own institutional capacity. *See King*, 767 F.3d at 246 (permissive intervention proper where intervenor and existing party share a common legal position in the litigation). That plainly satisfies the commonality requirement.

The School District satisfies all other requirements for permissive intervention. As discussed above, this motion is timely, *see supra* Section I.A, and there is no conceivable way in which the School District's participation at this early juncture could delay or prejudice adjudication of Defendants' or Plaintiff's rights. The Complaint was filed mere weeks ago, Defendants have not yet responded, no discovery has been conducted, and no scheduling order has been entered. No deadlines will need to be moved, no delay will occur, and, therefore, there is no risk of prejudice to the parties. *See King*, 767 F.3d at 246. The Court should permit the School District to intervene.

### III.    The School District's Motion Satisfies Rule 24(c).

Rule 24(c) requires that a motion to intervene be "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). To that end, the School District has attached its Motion to Dismiss which, together with this Memorandum of Law, apprises the Court and all parties of the initial defenses the School District intends to raise if the motion is granted. That is sufficient to satisfy Rule 24(c)'s purpose of providing notice of its grounds for intervention. *See Uber Techs., Inc. v. Boddie*, 746 F. Supp. 3d 231, 241 n.11 (E.D. Pa. 2024) (motion to dismiss satisfied Rule 24(c) because it notified plaintiff of intervenor's

position that the complaint failed to state a claim); *Pereira v. Foot Locker, Inc.*, No. 07-CV-2157, 2009 WL 4673865, at *5 (E.D. Pa. Dec. 7, 2009) ("[l]iberal construction" of Rule 24(c) is "especially appropriate when the policy . . . of providing notice to the existing parties of the basis and nature of the intervener's claim has been satisfied" (citation omitted)).  The Motion to Dismiss plainly puts the parties on notice of the School District's position that Plaintiff lacks standing and that its relief is barred by law.

## CONCLUSION

For the foregoing reasons, the Court should grant the School District of Philadelphia's Motion to Intervene.

Dated: May 5, 2026                          Respectfully submitted,

By:    */s/ Christian D. Sheehan*
   Christian D. Sheehan (PA Bar No. 314598)
   Burden H. Walker (*pro hac vice* forthcoming)
   Rachel F. Cotton (*pro hac vice* forthcoming)
   Aaron X. Sobel (*pro hac vice* forthcoming)
   Arnold & Porter Kaye Scholer LLP
   601 Massachusetts Avenue, NW
   Washington, DC 20001
   (202) 942–5000
   christian.sheehan@arnoldporter.com
   burden.walker@arnoldporter.com
   rachel.cotton@arnoldporter.com
   aaron.sobel@arnoldporter.com

   Paul J. Fishman (*pro hac vice* forthcoming)
   Arnold & Porter Kaye Scholer LLP
   One Gateway Center
   Suite 1025
   Newark, NJ 07102
   (973) 776–1900
   paul.fishman@arnoldporter.com