**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| GEVURA FUND,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION, *et al.*,<br><br>*Defendants*. | Case No. 26-cv-01957-NIQA<br><br>Oral Argument Requested<br>Expedited Hearing Requested |

**<u>MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR-DEFENDANT</u>**
**<u>SCHOOL DISTRICT OF PHILADELPHIA'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 3

LEGAL STANDARD................................................................................................................ 6

ARGUMENT ............................................................................................................................. 6

I.    Plaintiff Lacks Standing............................................................................................. 6

II.   Plaintiff May Not Seek Judicial Review of the Department's Enforcement Discretion. ..... 10

III.  The Relief Plaintiff Seeks Is Not Available Under the APA................................. 14

IV.   The APA Bars Suit Because an Adequate Alternative Remedy is Available....................... 16

V.    The Decision to Enter into the Agreement Was Not Arbitrary And Capricious. ................. 17

CONCLUSION......................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)................................................................................................16

*Allen v. Wright,*
    468 U.S. 737 (1984)..................................................................................................8

*American Disabled for Attendant Programs Today v. U.S. Department of Housing
    and Urban Development,*
    170 F.3d 381 (3d Cir. 1999).........................................................................11, 13, 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................6

*Balt. Gas & Elec. Co. v. FERC,*
    252 F.3d 456 (D.C. Cir. 2001)................................................................................12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................6

*Bimbo Bakeries USA, Inc. v. Rubio,*
    771 F. Supp. 3d 584 (E.D. Pa. 2025)..................................................................14, 16

*Bochra v. Department of Education,*
    145 S. Ct. 600 (2024)..............................................................................................11

*Bochra v. Department of Education,*
    No. 22-2903, 2024 WL 808061 (7th Cir. Feb. 27, 2024)....................................11, 16

*Citizens for Resp. & Ethics in Wash. v. FEC,*
    993 F.3d 880 (D.C. Cir. 2021)................................................................................12

*Comité de Apoyo a los Trabajadores Agrícolas v. Perez,*
    148 F. Supp. 3d 361 (D.N.J. 2015)..........................................................................10

*Comité de Apoyo a los Trabajadores Agricolas v. Perez,*
    45 F. Supp. 3d 477 (E.D. Pa. 2014)......................................................................15, 16

*Common Cause of Pa. v. Pennsylvania,*
    558 F.3d 249 (3d Cir. 2009)......................................................................................7

*Diamond Alternative Energy, LLC v. EPA,*
    606 U.S. 100 (2025)..................................................................................................9

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021)........................................................................................................18, 19

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)................................................................................................................10

*Finkelman v. Nat'l Football League*,
    810 F.3d 187 (3d Cir. 2016)...............................................................................................6, 7, 8

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)................................................................................................................10

*Harmon Cove Condominium Association, Inc. v. Marsh*,
    815 F.2d 949 (3d Cir. 1987)................................................................................................12, 13

*Hayward v. USAA Fed. Sav. Bank*,
    No. 24-CV-5602, 2025 WL 1094255 (E.D. Pa. Apr. 11, 2025) ................................................8

*Heckler v. Chaney*,
    470 U.S. 821 (1985)...................................................................................................2, 11, 12, 13

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
    593 F.3d 923 (9th Cir. 2010) .................................................................................................14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).............................................................................................................6, 8, 9

*Madison-Hughes v. Shalala*,
    80 F.3d 1121 (6th Cir. 1996) ..............................................................................................11, 13

*Massie v. U.S. Dep't of Hous. & Urban Dev.*,
    620 F.3d 340 (3d Cir. 2010).................................................................................................14, 15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)...........................................................................................................17, 18, 19

*Murthy v. Missouri*,
    603 U.S. 43 (2024).....................................................................................................................8

*Newark Branch, N.A.A.C.P. v. Town of Harrison*,
    907 F.2d 1408 (3d Cir. 1990).....................................................................................................7

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004).................................................................................................................2, 15

*Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*,
    145 F.3d 120 (3d Cir. 1998).....................................................................................................14

iii

*Physicians for Soc. Resp. v. Wheeler*,
    956 F.3d 634 (D.C. Cir. 2020) ...........................................................................................12

*Rollerson v. Brazos River Harbor Navigation District*,
    6 F.4th 633 (5th Cir. 2021) ...............................................................................................17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...........................................................................................................6

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ......................................................................................................6, 10

*Turner v. Sec'y of Dep't of Hous. & Urban Dev.*,
    449 F.3d 536 (3d Cir. 2006) ..............................................................................................16

*In re Tutu Water Wells CERCLA Litig.*,
    326 F.3d 201 (3d Cir. 2003) ..............................................................................................19

*Women's Equity Action League v. Cavazos*,
    906 F.2d 742 (D.C. Cir. 1990) ...........................................................................................17

**<u>Statutes</u>**

5 U.S.C. § 704 .......................................................................................................2, 16, 17

5 U.S.C. § 706(1) ......................................................................................................5, 14

5 U.S.C. § 706(2)(A) ..................................................................................................3, 5

42 U.S.C. § 2000d .........................................................................................................4

42 U.S.C. § 2000d-1 ...............................................................................................13, 15

**<u>Regulations</u>**

34 C.F.R. § 100.7 ........................................................................................................15

34 C.F.R. § 100.7(d) ..........................................................................................12, 15, 18

34 C.F.R. § 100.8 ....................................................................................................12, 15

34 C.F.R. § 100.9 ........................................................................................................12

34 C.F.R. § 100.10 ......................................................................................................12

34 C.F.R. § 100.11 ......................................................................................................12

**INTRODUCTION**

In December 2024, the School District of Philadelphia (the "School District") entered into a Voluntary Resolution Agreement (the "Agreement") with the U.S. Department of Education (the "Department") to resolve an investigation into the School District's compliance with Title VI of the Civil Rights Act of 1964 ("Title VI"). In the one-and-a-half years since it was signed, that Agreement has resulted in meaningful changes in the School District. Among other changes, the School District has enhanced its anti-discrimination policies, provided investigative training to District personnel involved in handling investigations (including continuing its policy of providing annual anti-discrimination training to all employees), developed a student informational program and survey for students in grades 6 through 12, retained an outside consultant with expertise in shared-ancestry discrimination and harassment, and purchased case management software to better monitor and document complaints of discrimination and harassment. The School District continues to implement the Agreement, subject to Department monitoring.

Plaintiff Gevura Fund now files suit seeking to undo the 2024 Agreement and to dictate how the Department should exercise its enforcement discretion under Title VI. The law does not grant Plaintiff such power. To the contrary, decades of Supreme Court precedent, as well as the text of the Administrative Procedure Act ("APA"), preclude Plaintiff's claims and the relief it seeks for at least five different reasons.

*First*, Plaintiff, a Delaware-based advocacy organization, lacks Article III standing to bring this litigation because its Complaint contains only a few vague and conclusory statements that the child of "at least one" unnamed member experienced "ongoing antisemitic hostility," which Plaintiff traced "in part" to the Department's failure to enforce Title VI and the Agreement. Such barebones allegations fall far short of the concrete, particularized, and traceable injury the

1

Constitution requires.  Plaintiff also has failed to satisfy the requirements of associational standing because it has not meaningfully identified the member on whose behalf it is suing.

*Second*, as the Supreme Court held over 40 years ago in *Heckler v. Chaney*, 470 U.S. 821 (1985), the type of agency action that Plaintiff challenges is not subject to judicial review.  In particular, the Complaint asks this Court to review the deployment of the Department's enforcement discretion in entering into the Agreement, in determining how to enforce that Agreement, and in deciding how to enforce Title VI against the School District more generally.  Federal courts, including the Third Circuit, have consistently refused to allow third parties to second-guess agency enforcement judgments in this way.

*Third*, the relief Plaintiff seeks is not available.  Section 706(1) of the APA permits a court to compel only discrete agency actions that the agency is *required* to take.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Here, however, Plaintiff does not identify any specific legislative command the Department has ignored.  To the contrary, the Department has already acted: it investigated complaints of discrimination, negotiated with the School District, and then opted to resolve its investigation through a Voluntary Resolution Agreement.  What Plaintiff actually seeks is not to remedy agency inaction, but to override the Department's chosen means of enforcement with Plaintiff's chosen substitute action, which the APA does not authorize.

*Fourth*, the APA permits a court to review final agency actions only if there is no other adequate alternative remedy.  *See* 5 U.S.C. § 704.  Here, such a remedy plainly exists: Title VI provides alleged victims of discrimination with a direct cause of action against Title VI recipients.  Accordingly, the APA does not authorize Plaintiff to circumvent that remedy by challenging the Department's discretionary enforcement decisions.

*Fifth*, even if the Department's enforcement discretion were reviewable, the Complaint fails to adequately allege that the Department's decision to resolve its investigation through the Agreement was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). Plaintiff offers only its own disagreement with the Department's remedial judgment, without alleging facts sufficient to suggest that the agency failed to consider relevant factors or that there was no rational connection between its findings and the resolution it adopted. And the reason for that failure is apparent: the Agreement and the Department's 27-page findings letter that Plaintiff attaches to the Complaint make clear that the decision to enter into the Agreement was eminently well-informed and reasonable, particularly in light of the School District's stated commitment to ending discrimination and harassment in its schools and its willingness to implement concrete institutional reforms, including the amendment of relevant policies. Indeed, in the relatively short time the Agreement has been in place, the School District has undertaken substantial implementation efforts, underscoring that the Agreement was a reasoned enforcement choice rather than an arbitrary or capricious action.

Each of these defects independently requires dismissal. Together, they confirm that this suit improperly asks the Court to assume a supervisory role over Department enforcement decisions that the law forbids.

**STATEMENT OF FACTS**

The Philadelphia school system is one of the largest K-12 public school systems in the United States, serving approximately 200,000 students in both District and charter schools for the 2025–2026 school year across 330 academic programs. Compl. ¶ 32. The School District receives millions of dollars annually in federal education funding, which is relied upon to provide essential educational services to Philadelphia's children. *See* Compl. ¶ 35.

3

In 2024, the Department opened an investigation of complaints that the School District had failed to comply with the requirements of Title VI, 42 U.S.C. § 2000d, by not responding appropriately to alleged harassment and discrimination of students based on shared ancestry. Compl. ¶¶ 18, 32–34.

On December 18, 2024, the School District entered into the Agreement with the Department to resolve the investigation. Compl. ¶ 35; *id.* Ex. A. The Department's investigation identified three categories of Title VI compliance concerns regarding whether: (1) the School District adequately responded to notice of alleged shared-ancestry harassment during the 2022–2023 and 2023–2024 school years; (2) the School District maintained records as required by Title VI; and (3) there had been apparent retaliation against the individual who had filed the initial complaint. Compl. ¶ 34; *id.* Ex. C at 3.

To address these concerns, the School District committed to a series of remedial initiatives to demonstrate compliance with Title VI, subject to the Department's ongoing review, approval, and monitoring. Compl. ¶¶ 44, 46; *id.* Ex. A. These measures included issuing a district-wide anti-harassment statement; reviewing and revising the School District's discrimination and harassment policies and procedures; developing or revising procedures for documenting harassment complaints; providing Title VI training to all staff; administering student climate assessments; retaining an outside consultant with expertise in shared-ancestry harassment; and purchasing case management software to better track and monitor complaints. Compl. ¶ 44; *id.* Ex. A. The Agreement also afforded the School District important procedural protections: the Department must provide written notice of any alleged breach and allow the School District sixty calendar days to cure before the Department may initiate administrative enforcement or judicial proceedings. Compl. Ex. A at 13.

On March 25, 2026, Plaintiff filed this Complaint against the Department and two of its officials.[1]  Plaintiff describes itself as a Delaware organization whose purpose includes "advocating for religious freedom and liberty, and fighting the scourge of antisemitism in educational systems and workplaces."  Compl. ¶ 11.  Plaintiff claims to have members who are "Jews and non-Jewish allies committed to advancing religious freedom and addressing antisemitism in the U.S., including in the public school system."  *Id.*

The Complaint asserts two claims under the APA.  Count I alleges that the Department has "unlawfully withheld or unreasonably delayed" enforcement of the Agreement under 5 U.S.C. § 706(1).  Compl. ¶¶ 52–68.  Count II alleges that the Agreement itself is arbitrary and capricious under 5 U.S.C. § 706(2)(A).  Compl. ¶¶ 69–79.  As a remedy, Plaintiff asks this Court to declare the Agreement unlawful and to direct the Department to make a Title VI compliance determination regarding the School District.  If the Department concludes that the School District is out of compliance with Title VI, Plaintiff asks the Court to compel the Department to commence enforcement proceedings.  Prayer for Relief ¶¶ (a)–(d).

Plaintiff does not assert any injury to itself.  Instead, the entire factual basis for standing appears to be a single sentence alleging that an unnamed (and otherwise unidentified) member of the organization has a child enrolled in the School District who has experienced "ongoing antisemitic hostility."  The Complaint does not merely fail to name the member or their child—it also fails to identify a school, to describe any incident or behavior, or even to provide a time period when the alleged "hostility" occurred.  Instead, Plaintiff simply asserts that the otherwise

---

[1] The metadata associated with the Complaint bears the internal title "2026-03-25 SDP - ***Sue and Settle*** [final for filing].pdf."  *See* Decl. of Erika Chen ¶¶ 5, 7 (emphasis added).  "Sue and settle" is a term of art describing a litigation strategy in which a plaintiff sues a government agency—not to obtain a genuinely contested adjudication, but to create a vehicle for an agency to abandon its pre-existing litigation or enforcement position.  *See* Mem. of L. in Support of Mot. to Intervene, at 2.

5

undescribed "hostility" is "traceable in part" to the purported weakness of the Agreement and the Department's alleged failure to enforce it.  Compl. ¶ 12.

## LEGAL STANDARD

"To survive a motion to dismiss" under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  This plausibility standard is also used to evaluate Rule 12(b)(1) challenges to a plaintiff's standing, as "standing cannot rest on mere 'legal conclusions' or 'naked assertions.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 n.55 (3d Cir. 2016) (citation omitted).

## ARGUMENT

**I.    Plaintiff Lacks Standing.**

Where, as here, an organization sues on behalf of its members, it must demonstrate that "at least one identified member had suffered or would suffer harm" sufficient to establish standing in his or her own right. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).  To establish Article III standing, a plaintiff must allege (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  A plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "[S]tanding cannot rest on mere 'legal conclusions' or 'naked assertions.'" *Finkelman*, 810 F.3d at 194 n.55 (citation omitted).  Here, however, barebones allegations and simple

regurgitation of standing's elements are all that the Complaint offers. These allegations are insufficient to support each and every element of standing.

***Injury in fact.*** To support injury, Plaintiff alleges that a single child who is enrolled in an unnamed school in the School District "has personally experienced ongoing antisemitic hostility." Compl. ¶ 12. The Complaint never describes the personal experience nor any particular incident— there is no allegation of any threat or harassment, exclusion from a program, or any specific act of any kind. It does not allege at which of the 330 schools the alleged hostility was felt, when it happened, or who was responsible.

This "naked assertion" is insufficient to establish standing. *Finkelman*, 810 F.3d at 194 n.55. The Third Circuit confronted a materially identical pleading deficiency in *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 907 F.2d 1408 (3d Cir. 1990), where the complaint alleged that defendants "'have discriminated and continue to discriminate against blacks, including members of and other persons represented by' the NAACP." *Id.* at 1415. The court held these allegations conclusory and affirmed that "it was proper for the district court to require the NAACP to go beyond these general allegations in the complaint and allege particularized facts supportive of its standing." *Id.* Gevura Fund's allegation that a member's child experienced "ongoing antisemitic hostility" is similarly conclusory and cannot support standing.

Nor can the Complaint fill that gap with allegations about district-wide antisemitism. Compl. ¶¶ 32, 48, 65. Those allegations describe generalized conditions across a public school system of nearly 200,000 students, but do not point to any concrete harm to any particular person. "It is not enough to assert a generalized, abstract grievance shared by a large number of similarly situated people." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009).

7

***Traceability.***  Plaintiff must allege facts showing that the injury is "fairly . . . trace[able] to the challenged action of the defendant." *Lujan*, 504 U.S. at 560.  Plaintiff must do more than assert that a causal link exists—it must allege *specific facts* explaining how Defendants' challenged conduct caused or contributed to the particular harm the plaintiff purports to have suffered. *Finkelman*, 810 F.3d 187, 194 (3d Cir. 2016) (plaintiffs cannot tender "legal conclusions" to establish traceability).  Here, because Plaintiff challenges the government's regulation of a third party, Plaintiff must allege particularized facts showing how the government's action or inaction produced the injury to Plaintiff through the third party's conduct.  *See Lujan*, 504 U.S. at 562; *Allen v. Wright*, 468 U.S. 737, 757–59 (1984) (parents of minority students lacked standing to challenge federal agency's enforcement decisions because alleged injury depended on independent conduct of third-party institutions).  Yet the Complaint includes only a single barebones allegation that a member's child's injury is traceable "in part to [the Department's] inadequate resolution and non-enforcement of the [Agreement]."  Compl. ¶ 12.

That is not enough.  Courts in this District have found similarly conclusory allegations insufficient to support standing.  *Hayward v. USAA Fed. Sav. Bank*, No. 24-CV-5602, 2025 WL 1094255, at *4 (E.D. Pa. Apr. 11, 2025) (allegation that "'[a]s a direct result' of [defendant's] alleged actions, [plaintiff] has suffered a 'credit denial'" was "conclusory").  And the Supreme Court has made clear that a lower court errs when it fails to make "specific causation findings with respect to any discrete instance" of the challenged conduct.  *Murthy v. Missouri*, 603 U.S. 43, 59–62 (2024).  Here, too, the Complaint's sole allegation as to traceability is unspecific, conclusory, and thus insufficient to establish standing.

***Redressability.***  To establish standing, a plaintiff must also allege facts demonstrating redressability, i.e., that it is "likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation marks omitted). A plaintiff must "show a predictable chain of events that would likely result from judicial relief and redress the plaintiff's injury." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 121 (2025) (citation and quotation marks omitted). In other words, Plaintiff must plead a substantial likelihood that the specific relief requested would actually alleviate the harm suffered—not merely that it might initiate a process that could theoretically lead to improvement. *See Lujan*, 504 U.S. at 561–62.

Here, too, the Complaint founders as the hypothetical causal chain between the alleged harm and the requested remedy is far too attenuated. Plaintiff asks this Court to compel the Department to make a compliance determination and then, *if* the Department finds noncompliance with Title VI, to commence enforcement proceedings. Compl., Prayer for Relief ¶¶ (a)–(d). But, if the Court were to order the Department to make a compliance determination, the Department might find the School District to be in compliance. And even if the Department found otherwise, Plaintiff has not and cannot plausibly allege that any subsequent enforcement proceeding would necessarily succeed. Nor can Plaintiff show that the outcome of such a proceeding would likely result in new remedial measures that would probably ameliorate the unspecified "hostility" that the unnamed child of Plaintiff's unnamed member is experiencing at one unnamed school. That is not a "predictable chain of events." *Diamond Alternative Energy*, 606 U.S. at 121. It is precisely the type of speculative, multi-link chain that defeats standing under Article III. *Id.*; *Lujan*, 504 U.S. at 561. Permitting a third-party advocacy organization to establish redressability by stringing together a series of discretionary agency choices—each of which might independently break the causal chain—would be the very "unprecedented and limitless approach" to standing that the

9

Supreme Court has often and recently rejected. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 391–92 (2024).

***Associational Standing.*** Plaintiff also fails to establish associational standing because it has not identified in any meaningful way the member on whose behalf it sues. To assert associational standing, an organization must "make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Summers*, 555 U.S. at 498 (emphasis added). Paragraph 12 of the Complaint merely parrots that legal standard: "[a]t least one identified member" has a child enrolled in the School District who was purportedly injured by the Department's failure to take harsher enforcement measures.

But the member is not merely unnamed. The Complaint does not allege where this person lives, which school their child attends, any specific incident, or any other fact that would allow either the Court or the School District to evaluate whether this person actually has standing in their own right. A plaintiff cannot satisfy *Summers* by asserting in conclusory terms that an "identified" member exists without actually identifying anyone. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990) (affidavit "falls short of establishing" standing because "it fails to identify the individuals" allegedly harmed); *Comité de Apoyo a los Trabajadores Agrícolas v. Perez*, 148 F. Supp. 3d 361, 372 (D.N.J. 2015) (failure to "identify any *specific* [member] harmed by the challenged provisions" was "[f]atal to [the organization's] assertion of associational standing"). The Plaintiff makes no effort to meet these standards, failing to even attach to its Complaint an affidavit asserting injury.

## II.   Plaintiff May Not Seek Judicial Review of the Department's Enforcement Discretion.

Plaintiff asks this Court to compel the Department to undertake enforcement actions that are strictly committed to agency discretion. Indeed, APA review of the Department's actions is precluded by *Heckler v. Chaney*, in which the Supreme Court held that "an agency's decision not

to take enforcement action should be presumed immune from judicial review." 470 U.S. 821, 832 (1985). Such decisions are shielded from review, the Court wrote, because they involve "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including whether a violation has occurred, how best to allocate limited resources, and whether the particular enforcement action fits the agency's overall policies. *Id.* at 831. An agency's refusal to take a particular enforcement action, the Court recognized, "shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch." *Id.* at 832. There is no reason to depart from this precedent here.

Consistent with *Heckler*, appellate courts have routinely barred suits like this one that seek to compel an agency to take specific action to enforce Title VI. In *Bochra v. Department of Education*, the Seventh Circuit barred a suit seeking to compel the Department to investigate a law school for alleged discrimination under Title VI because "courts may not review non-prosecution decisions that by statute are committed to the agency's discretion." No. 22-2903, 2024 WL 808061, at *2 (7th Cir. Feb. 27, 2024), *cert. denied*, 145 S. Ct. 600 (2024). Likewise, in *Madison-Hughes v. Shalala*, the Sixth Circuit barred a suit brought under Title VI seeking to compel the Department of Health and Human Services to collect racial and ethnic data from health care providers receiving federal funds. 80 F.3d 1121, 1124–29 (6th Cir. 1996).

Outside the Title VI context, appellate courts, including the Third Circuit, have repeatedly rebuffed claims seeking to compel an agency to investigate violations and initiate enforcement actions. In *American Disabled for Attendant Programs Today v. U.S. Department of Housing and Urban Development*, the court barred claims seeking to compel the Department of Housing and Urban Development to investigate violations and initiate enforcement action. 170 F.3d 381, 384,

11

386–87 (3d Cir. 1999) (hereinafter "*ADAPT*").  And in *Harmon Cove Condominium Association, Inc. v. Marsh*, the Third Circuit barred a suit seeking to compel an agency to enforce permit conditions.  815 F.2d 949, 952–53 (3d Cir. 1987); *see also Citizens for Resp. & Ethics in Wash. v. FEC*, 993 F.3d 880, 884–86 (D.C. Cir. 2021) (FEC nonenforcement decision unreviewable).  Particularly apropos here, the D.C. Circuit has held that "an agency's decision to reach a settlement" is among the "kinds of administrative determinations [that] evade review under *Heckler*'s presumption of non-reviewability." *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 642 (D.C. Cir. 2020) (citation and quotation marks omitted).  Indeed, the "decision to settle [an] enforcement action" is "within the agency's nonreviewable discretion." *Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 461 (D.C. Cir. 2001).

The Complaint flies in the face of the clear holding of *Heckler* and this unbroken line of cases applying it to foreclose third-party second-guessing of agency enforcement decisions.  Count I seeks an order requiring the Department to determine if the School District is in compliance with Title VI.[2]    Similarly, Count II challenges the Department's decision to "resolve its . . . investigation [into the School District] through the [Agreement]," in the hopes that the Department will reopen its investigation into the School District.  Compl. ¶ 71; *id.* Prayer for Relief § (c).  Both Counts thus seek review of actions "peculiarly within [the agency's] expertise" and that are unsuitable for judicial review.  *Heckler*, 470 U.S. at 831.  *Heckler* requires that this Court avoid allowing a third-party to second-guess the Department's chosen measures among its

---

[2] Accepting Count I could set in motion a cascade of administrative proceedings: the Department would first have to conduct a compliance determination across a 200,000-student school system, then—if noncompliance is found—attempt to secure voluntary compliance under 34 C.F.R. § 100.7(d), then—if that fails—initiate formal enforcement proceedings with notice, administrative hearings, and a decision on the record, 34 C.F.R. §§ 100.8–100.10, all of which would be subject to their own judicial review, 34 C.F.R. § 100.11.

available enforcement tools because it "is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831–32.

Title VI also does not provide "meaningful standards for defining the limits of [the agency']s discretion" that this Court could use to review the exercise of the Department's enforcement discretion. *Id.* at 832–34. In dismissing a materially identical request to compel agency Title VI enforcement, the Sixth Circuit held that the statute lacks "meaningful standards, criteria[,] or priorities for a court to use" that articulate the limits of the Department's discretion. *Madison-Hughes*, 80 F.3d at 1128. Instead, Title VI contains only a broad proscription—"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance"—and a broad authorization to federal agencies to "issu[e] rules, regulations, [and] orders" to effectuate that proscription, 42 U.S.C. § 2000d-1. The Third Circuit has interpreted similarly broad statutory mandates as failing to "provide[] any standards to limit [agency] discretion . . . so as to rebut the presumption of unreviewability." *ADAPT*, 170 F.3d at 387 (no meaningful standards to review agency action under statute charging agency with "administer[ing] the programs and activities relating to housing and urban development in a manner *affirmatively to further* the [statute's] policies" (emphasis in original)). "[I]n the absence of some guidelines binding the [agency's] enforcement decisions," this Court is "bound by the Supreme Court's ruling that such determinations are left to the [agency]." *Harmon Cove*, 815 F.2d at 952–53.

Nor does the Agreement itself create a judicially reviewable duty. The Agreement's commitment that the Department will "monitor[]" the School District's implementation, Compl. Ex. A at 13, specifies no timeline, no method, and no trigger for escalation. The Agreement leaves

13

to the Department's discretion if, when, and how to monitor the School District's compliance. How the Department chooses to exercise that discretion is not subject to challenge by third parties under the APA.[3]  Permitting third parties to upend an agency's enforcement resolution in pursuit of harsher penalties would disrupt the federal government's ability to resolve cases through settlement, negotiated resolution, or even plea agreement—and invite precisely the kind of judicial superintendence of agency enforcement that *Heckler* forbids.

## III.    The Relief Plaintiff Seeks Is Not Available Under the APA.

The Complaint also fails because Plaintiff's requested remedy is not available.  The Complaint seeks relief under § 706(1), *see* Compl. ¶ 59, through which a court may "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).  This provision, though, does not "give [courts] license to 'compel agency action' whenever the agency is withholding or delaying an action [the court] think[s] it should take." *Massie v. U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 340, 347 (3d Cir. 2010) (quoting *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010)).  Instead, a court's "ability to 'compel agency action' is carefully circumscribed to situations where an agency has ignored a specific legislative command." *Id.*; *see also Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 124 (3d Cir. 1998) (review under § 706(1) extends to "inaction that is . . . contrary to a specific Congressional mandate"); *Bimbo Bakeries USA, Inc. v. Rubio*, 771 F. Supp. 3d 584, 590 (E.D. Pa. 2025) ("A court's ability to compel agency action . . . is circumscribed; the agency must have a discrete, nondelegable duty to act.").

Here, no such "legislative command" or "duty" exists.  To the contrary, Plaintiff asks the Court to order the Department to determine if the School District is complying with Title VI.  If

---

[3] Of course, the party against whom the Department takes enforcement action may challenge those acts as violating its rights under the applicable regulations, statutes, or the Constitution.

14

the Department finds otherwise, Plaintiff seeks an order that the Department initiate the "next required enforcement steps" under 34 C.F.R. §§ 100.7(d) and 100.8.  Compl. ¶¶ 54–56; *id.* Prayer for Relief § (c).  None of these actions, however, is the kind of "*discrete* agency action that [the Department] is required to take."  *Norton*, 542 U.S. at 64 (emphasis in original).  Rather, Title VI directs the Department to "effectuate" nondiscrimination through "rules, regulations, or orders of general applicability" and "by any other means authorized by law."  42 U.S.C. § 2000d-1.  Such general statutory or regulatory mandates that require an agency to act in a particular "manner" are not the kinds of actions a court may compel under the APA.  *Norton*, 542 U.S. at 66–67.  Title VI leaves the choice of enforcement means to the agency without commanding any particular action against any particular recipient at any particular time.  *Cf. Massie*, 620 F.3d at 349–56 (APA claim could proceed only because statute directed agency to "maintain" specific payments).  The Complaint identifies no "specific, unequivocal command" of the statute that the Department has violated.  *Norton*, 542 U.S. at 63–64; *see also Comité de Apoyo a los Trabajadores Agricolas v. Perez*, 45 F. Supp. 3d 477, 489–90 (E.D. Pa. 2014) (denying motion to compel agency action where agency had not "ignored any specific legislative commands").[4]

Moreover, the Department has not failed to act.  It has already acted.  It investigated Title VI complaints involving the School District, made extensive findings, and resolved the matter by entering into the Agreement after negotiating with the School District.  Plaintiff simply wants this Court to second-guess the Department's chosen enforcement and impose the Plaintiff's preferred approach.  The APA does not provide for such relief.  As the court held in *Comité*,  an agency has

---

[4] The implementing regulations at 34 C.F.R. §§ 100.7-100.8 are no more specific.  They establish a general procedural framework but contain no provision directing the Department to make a compliance determination by a date certain, to deem voluntary compliance efforts a failure under specified criteria, or to initiate particular enforcement proceedings at a defined point.

"broad discretion to choose how best to marshal limited resources and personnel to carry out its delegated responsibilities." 45 F. Supp. 3d at 491–92.

In short, the Department bears no "mandatory, nondiscretionary duty to 'reconsider'" the agency decision it has already rendered, and neither the statute nor regulations "provid[e] a discreet requirement for the agency to *re-adjudicate*." *Bimbo Bakeries*, 771 F. Supp. 3d at 592–93 (emphasis in original). The remedy Plaintiff seeks is simply not available to it.

## IV.    The APA Bars Suit Because an Adequate Alternative Remedy is Available.

The APA authorizes judicial review of final agency action only if "there is no other adequate remedy in a court." 5 U.S.C. § 704. The Third Circuit has consistently concluded that an "adequate judicial remedy [already] exists" where plaintiffs can "pursue . . . claims of . . . discrimination directly against federal-funding recipients." *ADAPT*, 170 F.3d at 390; *see also Turner v. Sec'y of Dep't of Hous. & Urban Dev.*, 449 F.3d 536, 540–41 (3d Cir. 2006) (availability of private right of action against discriminator under Fair Housing Act constituted an "adequate remedy" that foreclosed APA review).

Title VI provides Plaintiff with the same alternative remedy the Third Circuit has held adequate. Specifically, Title VI authorizes a private right of action against recipients of federal funds that allegedly engage in intentional discrimination. *See Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001). The Seventh Circuit's decision in *Bochra* is on point. There, the court dismissed a Title VI challenge seeking to compel the Department of Education to investigate allegations of discrimination at the plaintiff's law school, precisely because he "had an adequate remedy against the law school for discrimination." 2024 WL 808061, at *2. The Circuit explained that "[i]f [plaintiff] believes that the law school discriminated against him and the Department did not remedy it, then he could have sued the law school, as a recipient of federal funds, under Title VI of the Civil Rights Act of 1964 to achieve the remedy he seeks." *Id*. The D.C. Circuit has

16

concluded the same. *See Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (recognizing private suits under Title VI as adequate remedy for discrimination by federal-funds recipients and thus dismissing APA claim). Title VI's private right of action constitutes an "adequate remedy in a court," 5 U.S.C. § 704, and forecloses Plaintiff's APA suit here.[5]

## V. The Decision to Enter into the Agreement Was Not Arbitrary And Capricious.

Arbitrary-and-capricious review under the APA is "narrow," and "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency action survives review as long as the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (citation and quotation marks omitted). To that end, a court should set aside agency action only where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

Here, the Complaint's own allegations make clear that neither the Department's threshold decision to resolve the investigation through a voluntary agreement rather than adversarial enforcement proceedings, nor the substantive terms of the Agreement itself, was arbitrary or capricious. Even accepting the Complaint's allegations as true, the Department investigated specific Title VI compliance complaints—including the School District's alleged deficiencies when responding to harassment complaints, assessing and redressing a hostile environment, and

---

[5] The Fifth Circuit's decision in *Rollerson v. Brazos River Harbor Navigation District*, 6 F.4th 633 (5th Cir. 2021), is not to the contrary. There, the Court held that Title VI's private right of action for intentional discrimination was not an "adequate alternative remedy" under § 704 to seek review of an agency's decision to deny an administrative complaint of disparate impact. *Id.* at 643–44. Here, Plaintiff's only alleged injury is that the child of at least one of its members confronts "ongoing antisemitic hostility," in other words, intentional discrimination. Title VI's private right of action would be more than adequate to remedy such alleged harm.

17

maintaining required records.  Compl. ¶ 34.  The Department then negotiated the Agreement at arms'-length which, among other provisions, required the School District to: (i) disseminate an anti-harassment statement; (ii) review and revise its policies as necessary to ensure they adequately address Title VI complaints; (iii) clarify reporting and investigation procedures; (iv) improve its complaint monitoring system; and (v) institute training protocols on Title VI and on the School District's investigative processes.  Compl. ¶ 44.  The Agreement also includes a monitoring component requiring the Department to oversee the School District's implementation of these measures. Compl. ¶ 46.  These provisions are directly responsive to the Department's investigative findings, attached as Exhibit C to the Complaint.  The decision to address those deficiencies through voluntary compliance—the method the Department's own regulations contemplate as the preferred first step, *see* 34 C.F.R. § 100.7(d)—rather than through adversarial enforcement proceedings was itself a rational exercise of remedial discretion grounded in the agency's expertise.

Plaintiff nowhere alleges that these provisions were wholly untethered from the Department's findings.  Rather, Plaintiff alleges only that, in its subjective view, the measures were *insufficient* and that the Department should have demanded more.  *See, e.g.*, Compl. ¶¶ 36, 40, 75.  But a plaintiff cannot state an arbitrary-and-capricious claim merely by asserting that they believe the agency should have imposed harsher remedies.  An agency is not required to adopt the most aggressive enforcement posture available; it need only demonstrate a rational connection between its findings and the remedy it selected.  *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (a court "may not substitute its own policy judgment for that of the agency"); *State Farm*, 463 U.S. at 43 (courts uphold agency decisions so long as "the agency's path may reasonably be discerned" (citation omitted)).  And that is what happened here: the Department

18

identified potential areas of Title VI compliance issues and negotiated an agreement requiring the School District to remediate each one.  That is a quintessentially rational connection.  *See In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003) (consent decrees and agreements between agencies and regulated entities should be upheld as long as "settlement terms are . . . not arbitrary, capricious, and devoid of a rational basis").

At bottom, the Complaint reflects Plaintiff's policy disagreement with the Department. Plaintiff believes the Department should have imposed more sweeping measures and that the decision to pursue resolution through a voluntary agreement, rather than through the termination of funds or adversarial proceedings, was misguided.  But the APA does not empower this Court to vacate an agency's chosen enforcement vehicle, or the terms of the resolution it negotiated, simply because a third party would have preferred a different approach.  *See Prometheus Radio Project*, 592 U.S. at 423; *State Farm*, 463 U.S. at 43.  The Department investigated, identified noncompliance, chose the remedial pathway its own regulations favor, and negotiated terms calibrated to the circumstances.

Plaintiff identifies no relevant fact the Department failed to consider, no evidence it ignored, and no explanation it failed to provide.  That failure is one of the Complaint's many fundamental inadequacies requiring dismissal.

## CONCLUSION

For the foregoing reasons, the Court should grant the School District of Philadelphia's Motion to Dismiss.

Dated: May 5, 2026                          Respectfully submitted,

By:    */s/ Christian D. Sheehan*         
         Christian D. Sheehan (PA Bar No. 314598)
         Burden H. Walker (*pro hac vice* forthcoming)
         Rachel F. Cotton (*pro hac vice* forthcoming)

Aaron X. Sobel (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942–5000
christian.sheehan@arnoldporter.com
burden.walker@arnoldporter.com
rachel.cotton@arnoldporter.com
aaron.sobel@arnoldporter.com

Paul J. Fishman (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
One Gateway Center
Suite 1025
Newark, NJ 07102
(973) 776–1900
paul.fishman@arnoldporter.com

20